May it please the Court, my name is Daniel Bookin. I represent the Plaintiff Appellant Kevin Rhodes, seated with me at Council Table are Molly Edgar and Michelle Abundas. I'd like to reserve five minutes for rebuttal. Rhodes appeals two summary judgment orders dismissing 1983 claims alleging that David Ford retaliated against him for filing a grievance at Pelican Bay State Prison. Rhodes' first claim regards a January 16, 2020 incident where Ford filed a false rules violation report, an RVR, in retaliation for a grievance that Rhodes had filed regarding the law library that Ford supervised. First, the District Court's order should be reversed because there's a genuine dispute as to whether Ford had retaliatory intent when he filed the RVR against Rhodes. Ford testified twice at his deposition that he was told that Rhodes had filed a grievance against him, a fact that the District Court did not even mention in its decision. As set forth in our brief, there's substantial evidence that Ford was told this shortly before the library incident. When Rhodes entered the library on January 16, Ford was angry with him. Ford refused to give Rhodes a signed receipt for Rhodes' Form 22 request for information, which is undisputed that Rhodes was entitled to. When Rhodes protested as he had a right to do, Ford filed an RVR against him. That's more than enough evidence to create a genuine dispute as to whether Ford had retaliatory intent when he filed the RVR. Second, the District Court erred as a matter of law when it granted summary judgment on the ground that Ford could not have had retaliatory intent because he did not know that Rhodes' grievance was filed against him personally. That's wrong as a matter of law. Section 1983 has no requirement that a defendant know that a grievance was filed against him personally to unconstitutionally retaliate against the prisoner. He needs to know that there was a grievance. That's correct. At least it has a reasonable suspicion of grievance, but it does not necessarily have to be against him personally. That's the point. Not at all. Both this Court and other courts have reversed summary judgment decisions on retaliatory retaliation claims when the grievances at issue were not against the defendant at all. It's unconstitutional to retaliate against a prisoner for filing a grievance, period. So the District Court's decision was wrong both on the facts and on the law. I'd like to move on to Rhodes' second claim regarding the January 28th attack against him, which I might add is further evidence of Ford's retaliatory intent with respect to the January 16th incident. Rhodes raised the January 28th attack in his grievance 20-187. The District Court ruled that Rhodes had not exhausted his administrative remedies because he failed to follow prison procedures. But Rhodes did exhaust his administrative remedies because the third-level appeals board at the prison denied the January 28th attack on the merits. In Rays v. Smith, this Court held that a prisoner has exhausted his administrative remedies if the appeals board denies the grievance on the merits, even if the prisoner failed to follow prison procedures. In Rhodes' original grievance, he described the issue as, quote, a civil conspiracy by Ford and other staff to retaliate against appellant for the submission of a 602 appeal. In Rays, this Court held that a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought. The issue that the third-level appeals board decided was, quote, appellant alleges staff conspired to retaliate against him for filing an appeal against library technical assistant D. Ford. That clearly encompasses Rhodes' description of the January 28th attack in his CDCR 602 appeal form, which the appeal board explicitly stated that it considered. Rhodes stated in that form that Ford conspired with other staff members to incite prisoners to attack him. If the appeals board intended to limit its decision to the January 16th incident, it would have done so, but it didn't. It denied the January 28th grievance on the merits, and Rhodes' administrative remedies were exhausted. So the argument here is, although he might not have raised it in his initial complaint by the time we get to the third level, it has been raised, and it's been responded to. That's correct. Because in that last decision, after a thorough review of all documents and evidence, that includes, then, his documents in front of the at the third level. Yes. The appeals board explicitly stated that it reviewed and considered thoroughly at 602. Yes. If the Court has no further questions, I'd like to reserve the rest of my time for rebuttal. Thank you, counsel. Thank you. Good morning, Your Honors, and may it please the Court. I'm Deputy Attorney General Chase Goldstein for Defendant Appellee David Ford. The Court below dismissed Kavan Rhodes' two separate retaliation claims in two separate summary judgment orders. The first retaliation claim involves a January 16th, 2020, rules violation report that was dismissed because Rhodes could not show that Ford issued it with an intent to retaliate. The second claim, the second retaliation claim, involved an attack against Kavan Rhodes. Can I go back to that first one? As I understand, the district court said there's no showing that Ford even knew about it, and, therefore, it could not have been retaliation. The district court said that there was no showing that Ford knew that it was against him personally. Right. Which the grievance was not. It was about general law library policies. But if it's — but I think you would probably agree, as a matter of law, it doesn't require that it be against him personally. What's the evidence that he knew about the grievance? The — there's evidence that he knew about the grievance on December 26th, when Kavan Rhodes provided David Ford a written request for assistance with gathering documents so he could prosecute the grievance. And that written request explained to David Ford exactly what the grievance was about, about law library policies. And instead of stonewalling Kavan Rhodes, Rhodes complied with the request and provided Rhodes the documents he needed to prosecute his grievance. And then after that date, but before the alleged retaliation occurred, Rhodes visited the law library six more times without any incident, which begs the question, what happened on the seventh visit? And as Rhodes has already answered for us, he got into a dispute with David Ford on January 16th about additional documentation. And that's what caused the rules violation report on January 16th, not a grievance that Rhodes filed over a month prior. So there are all these intervening steps between David Ford learning about a grievance that didn't involve him, for which he faced no personal liability or potential adverse consequences. There are all these other intervening steps that discredit any notion that show that David Ford was not acting to retaliate. And then, as Rhodes admits, he got into a disagreement with David Ford on January 16th. And again, that's what caused the rules violation report. If I may, then I'll turn to the second issue regarding the January 28th attack that Rhodes alleges Ford organized against him. Rhodes submitted grievance 187 on January 22nd, 2020. This grievance did not reference, because it could not reference, the alleged attack six days later. Rhodes raised the issue of the attack for the first time when he appealed this grievance to the third level in March of 2020. In these circumstances, the prison's procedural requirements are clear, binding, and unconditional. Title 15, Section 3084.1b of the California Code of Regulations expressly deems as unexhausted new issues that the prisoner raises for the first time on appeal, which is what Rhodes did here. What do you do with the fact that he appears to have raised it at the third level and it appears to have been responded to at the third level without saying, hey, you can't do it this way? So there's no affirmative obligation in the procedural requirements for the prison to reject the grievance. Other code sections say that they may reject the grievance, but they can also consider the broader grievance, rendering a judgment on the properly raised issues while leaving the improperly raised issues unexhausted. Right, but I'm looking at this statement. I'm on ER 541, conclusion and order, quote, denied. After a thorough review of all documents and evidence, and in fact, by this time, we've got the complaint as to what happened. So why is that not exhaustion? Not that they had to consider it, but they appear to have done so. So the Wilson v. Zubiate case cited in our brief states that to render a judgment on the merits, the grievance office must actually affirmatively and substantively discuss the new issue, which they don't do here. Rhodes referred to a conspiracy against him at the second level. All the third level is doing is saying, we reviewed the documents regarding this conspiracy. So there's no affirmative statement. You added the word with respect to this conspiracy. The words are, after a thorough review of all documents and evidence, without a qualifier. Yeah. I mean, it's just a generic. I mean, when they define the issue at the third level, it's a very generic statement saying we've reviewed, you know, we are reviewing your claims regarding a conspiracy. And they're just reviewing the same issues that he has raised at the second level. Again, there is no affirmative statement that we are addressing this new issue of an alleged attack. But, of course, the attack, according to him, is that that's part of the conspiracy. Yes, but the attack is part of the conspiracy, but the third level review board is only reviewing the issues raised at the second level. There's no reference to an attack in the third level. There's just this generic statement, we have reviewed the documents that you have submitted. So that's not substantively. But the word is all in there. We reviewed all of the documents. And this document is in front of them, right? Right. Yeah. Okay. I mean, I disagree that that is an instance of them substantively and affirmatively addressing the issue of the attack like they did, like what the Wilson v. Zubiate case requires. Saying that we reviewed the documents in front of us doesn't say we have considered this attack, this alleged attack. Again, to me, that is a generic statement that they include in every grievance. This is kind of standard template language. This is not affirmative representation that they have substantively dealt with the issue of the alleged attack. So you're saying the standard language doesn't mean anything? In this case, I am saying I don't think we should find additional meaning in, we shouldn't read additional meaning into the standard language that they have substantively considered the alleged attack. I have to say, in some respects, I'm sympathetic to the prison officials here and with the district judge because the appellant here files lots and lots and lots of these things.  And some of them, there's nothing to them or they're not exhausted and so on. And it's a little hard to separate out the wheat from the chaff when there's a lot of chaff. Correct. There may be a little wheat here, however. Correct. I mean, this grievance in particular is a good example of that. He alleges a long and complex series of events starting in December, mostly relating to law library access issues, that he was denied access to the law library, that they confiscated his legal documents improperly, that they only allowed him to bring six pieces of paper to the law library, and he couches all of them in this alleged conspiracy, or that they're all the product of this alleged conspiracy. And then when he appeals it to the final level, he says, there's also this, another product of this conspiracy was to attack me. And I submit that that standard template language that is in grievances, that we have reviewed everything that you have provided us, forgive me for paraphrasing, is unhelpful. But, again, I. . . Here's the problem, is that we get these cases where the prisoner says, you didn't consider my evidence. And then we take at face value that standard language, and, in fact, they did. And now you're basically the shoes on the other foot, and you're saying, well, they didn't really. That's the difficulty I have. Right. And you may be right, and, of course, there's no question there are a lot of these grievances he's filed, so I get it. But it's just, that's the conundrum when you say, really, it didn't mean that. We'd like to say in other cases, yeah, they looked at everything. Yeah. He said that. With that, unless there are any further questions. . . None from my colleagues, so thank you for your argument. Thank you. Any rebuttal? No. What could have changed between the time that Ford first saw the grievance in December and when he issued the RVR on January 16th? I have an answer. He was told that the grievance was against him personally shortly before January 16th. That's what changed. That's what created his retaliatory intent. So I know this isn't part of the appeal, but just so I have a flavor for it, what damages are you seeking? What are Rhodes damages? Yeah. This Court has held that violation of a prisoner's First Amendment rights. Oh, I understand. But what are you do you have a number you're seeking in this case? Well. . . I mean, if you get down to trial, what number are you going to ask the judge to award the jury? In the complaint, I believe we asked for $250,000. That's subject to negotiation. That's a we'll see number.  Okay. Thanks. Mr. Goldstein cited Wilson v. Zubiate saying that the Appeals Board must discuss the facts in order to decide an issue. Well, first of all, that was pure dictum in Zubiate because the Board in that case did not render any decision on the merits. It canceled the grievance and sent the grievance to the Veterans Administration. Moreover, in this case, the Appeals Board did not discuss any facts in its decision. Yet, Ford concedes that there was a decision on the merits with respect to the January 16th incident. So, obviously, the Appeals Board didn't need to discuss merits. What the Appeals Board said was it decided the issue of whether Ford conspired to retaliate against Rhodes for filing a grievance. And that clearly covers the January 28th attack. In conclusion, the District Court's order regarding the January 16th RVR was wrong on the facts and on the law. The January 28th attack on Rhodes was egregious. On January 16th, Ford banned Rhodes from the law library. Documentary evidence shows that less than two weeks later, Ford arranged for Rhodes to come back to the library. As Rhodes waited at the library gates, he was brutally attacked by four inmates as Ford watched. And Rhodes ended up in the prison hospital. When Ford was asked about the attack at his deposition, he repeatedly committed perjury. He said that he did not arrange for Rhodes to come to the library, even though computer records show that he did. He said he didn't see the document that brought Rhodes to the library, even though his initials were on it. He said he didn't alter the document, and it was altered, even though it was in his sole possession. Ford's conduct was outrageous, and he should be held accountable for it. Ford's conduct, if I misspoke, was outrageous, and he should be held accountable for it. Cavan Rhodes should have his day in court. Thank you. Thank you, counsel. Thank you both for your argument today. The case just arguably submitted for decision, and we'll be in recess for the morning. Thank you. All rise. Thank you.
judges: THOMAS, FLETCHER, SMITH